Filed 7/27/26  Saint Andrews Equities v. Curry Parkway CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAINT ANDREWS EQUITIES, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CURRY PARKWAY, L.P.,<br><br>    Defendant and Respondent. | B343960<br><br>(Los Angeles County Super. Ct. No. 20TRCV00565) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David K. Reinert, Judge.  Affirmed.

Law Office of Richard Jacobs and Richard B. Jacobs for Plaintiff and Appellant.

Fike & Boranian and David A. Fike for Defendant and Respondent.[1]

_____

[1] Platino, Inc. was also a named defendant, although the October 28, 2024 minute order shows the trial court and the parties agreed to refer to Curry Parkway, L.P. and Platino, Inc. together as Curry Parkway, L.P. throughout the proceedings.  The judgment did not name Platino, Inc. as a defendant, but the same minute order stated "judgment will be entered as to both

This case comes before us a second time. It arises from the nonjudicial foreclosure of a deed of trust held by defendants Curry Parkway, L.P. and Platino, Inc. (Curry Parkway) that encumbered a commercial property owned by plaintiff Saint Andrews Equities LLC (Saint Andrews). The deed of trust was secured by a promissory note executed by Saint Andrews in the amount of $300,000. Saint Andrews maintained the foreclosure was wrongful, principally because Curry Parkway had refused to accept Saint Andrews's offer of a cash-only pay-off of the note, requiring instead payment by a wire transfer or cashier's check. Saint Andrews then sued Curry Parkway for breach of contract and wrongful foreclosure. Following a three-day trial, the jury returned a special verdict finding in favor of Curry Parkway on both causes of action. Saint Andrews appeals from the judgment, claiming (1) Curry Parkway's refusal to accept the cash payment offer was unlawful; and (2) the evidence failed to show Saint Andrews was in default at the time of the foreclosure sale. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Saint Andrews is a real estate development company. In June 2019, Saint Andrews purchased a commercial property in Gardena, California, from the Carolyn C. Auswerger Trust (Trust). The purchase was financed by a loan from the Trust, evidenced by a $300,000 promissory note and secured by a deed of trust. In March 2020, Saint Andrews defaulted on the loan. A

---

Defendants." Based on the briefs and other documents filed with this court, we assume Curry Parkway, L.P. is the sole respondent on appeal.

foreclosure sale of the Gardena property was scheduled for August 6, 2020.

Curry Parkway is in the business of buying and selling commercial properties with funding provided by third party private investors. On or about August 1, 2020, prior to the scheduled foreclosure sale, the Trust assigned its rights under the promissory note and deed of trust to Curry Parkway.

In early August 2020, e-mails were exchanged between Chris Mathys of Curry Parkway and Benjamin Ellenberg, Chief Operating Officer of Saint Andrews: On August 4, 2020, Mathys notified Ellenberg of the assignment and advised him the loan was in default with a balance due that included unpaid property taxes. After some discussion, they agreed to delay the pending foreclosure sale to August 13, 2020, to negotiate a reinstatement of the loan. In an August 5, 2020 e-mail to Mathys, Ellenberg confirmed "foreclosure . . . has been postponed while we put together an agreement between your office and mine." The same day, Mathys proposed a series of conditions for reinstatement, one of which was the deposit of a cashier's check in the amount of $28,247.08 with First American Trustee (foreclosure trustee) by August 7, 2020. The funds were "to cure loan delinquencies, legal fees, [and] past due property taxes." The check was not sent. No agreement was reached to reinstate the loan.

In an August 10, 2020 e-mail to the foreclosure trustee, Ellenberg stated that Saint Andrews had decided to pay off the promissory note in full and had requested a pay-off demand from Mathys. Ellenberg added the loan was to be paid off in cash to be hand-delivered to the foreclosure trustee. The same day, Mathys e-mailed Ellenberg a pay-off statement in the amount of $325,762. Mathys stated the pay-off amount was "good" through

3

the day of the foreclosure sale on August 13, 2020. Mathys also informed Ellenberg that the foreclosure trustee would not accept a cash payment; only a wire transfer to a designated bank or a cashier's check was acceptable. Saint Andrews never delivered the pay-off amount.

On the day of the foreclosure sale, the trial court heard and denied Saint Andrews's request for a temporary restraining order to stop the sale from proceeding. The sale went forward as scheduled on August 13, 2020, and the Gardena property was sold to a third party bidder for $403,500.01. Saint Andrews neither attended the sale nor bid on the Gardena property.

Saint Andrews filed suit against Curry Parkway. In the operative pleading, the second amended complaint, Saint Andrews alleged seven causes of action against Curry Parkway. Only two of them, breach of contract and wrongful foreclosure, were submitted to the jury.

The jury rendered a special verdict on October 30, 2024, making findings in favor of Curry Parkway on both causes of action. Specifically, the jury found a contract existed between Saint Andrews and Curry Parkway, Saint Andrews failed to do all, or substantially all, of the significant things the contract required, and failed to cure its breach of the contract. The jury further found the foreclosure sale of the Gardena property was not wrongful.

Judgment in favor of Curry Parkway was entered on November 18, 2024. This appeal followed the trial court's denial of Saint Andrews's new trial motion.

4

## DISCUSSION

### A. Curry Parkway Was Not Obligated to Accept Cash as the Manner of Payment

Saint Andrews initially contends Curry Parkway was compelled by state and federal law to accept Saint Andrews's offer of cash because it was valid legal tender as defined by title 31 United States Code section 5103.[2] The statute provides in part: "United States coins and currency . . . are legal tender for all debts, public charges, taxes, and dues."[3] Saint Andrews's claim would be cognizable on appeal if Curry Parkway had either questioned the validity of the cash offer as legal tender or sought to confer legal tender status on the requested wire transfer or cashier's check. (See *Berry v. Hannigan* (1992) 7 Cal.App.4th 587, 590, and cases cited therein.) Neither occurred here. The record shows Curry Parkway rejected the cash offer as a manner of payment, not as valid legal tender.

It is not unlawful for an individual, or a private or public entity to favor another manner of payment over cash in the normal course of business.[4] Under federal law, a the Board of

---

[2] Saint Andrews cites no California authority to support this claim.

[3] Congress enacted this and other legal tender provisions in response to its express constitutional authority. (See U.S. Const., art. 1, § 8, cl. 5 and § 10, cl. 1.)

[4] Chris Mathys of Curry Parkway testified that cash is not acceptable for business purposes because the source of the cash would have to be identified. The usual practice of receiving loan pay-offs is either by a wire transfer or a cashier's check. David Bark testified, on behalf of the foreclosure trustee, that loan pay-

Governors of the Federal Reserve explained: "There is no federal statute mandating that a private business, a person, or an organization must accept currency or coins as payment for goods or services. Private businesses are free to develop their own policies on whether to accept cash unless there is a state law that says otherwise." (https://www.federalreserve.gov/faqs/currency 12772.htm [as of July 6, 2026], archived at <https://perma.cc/Z9XQGNBQ.)

In California, an appellate court upheld a Vehicle Code statute requiring vehicle-towing companies to accept credit cards because "[t]he legislation simply requires that towing and storage facilities accept credit cards as a manner of paying legal tender." (*Berry v. Hannigan, supra,* 7 Cal.App.4th at p. 590.) The court observed "there is a distinction between legislation requiring the acceptance of checks or credit cards as a manner of payment, which carry a promise to pay in legal tender, from legislation establishing that checks or credit cards discharge debts upon presentation without any recourse against the payee." (*Ibid.*)

The record shows the issue before the jury was whether Curry Parkway properly advised Saint Andrews of its objections to cash as the manner of payment. The trial court instructed the jury pursuant to Code of Civil Procedure section 2076: "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind

---

offs are typically made by a wire transfer or a cashier's check, not in cash.

which he requires, or be precluded from objecting afterwards." This is a question of fact, which the jury necessarily determined in favor of Curry Parkway to find the foreclosure sale was not wrongful. Saint Andrews does not dispute the sufficiency of the evidence to support this finding.

Whether the cash offer constituted valid legal tender was not an issue at trial. It was neither a question of law for the trial court to decide nor for us to review on appeal.

Saint Andrews also faults the special verdict form, specifically challenging a purported question as one of law for the trial court to decide: "14b. Was this sale wrongful because Curry Parkway waived any objections to the offer of cash payment at the time of the offer?" However, in our reading of the special verdict form we discern no such question. The form only has questions numbered 1 through 11 with various lettered subparts, none of which include the language Saint Andrews is now contesting. Further, the record does not show, and Saint Andrews does not assert, that it objected to the special verdict form as given to the jury or submitted a proposed form to be used instead.

## B. Saint Andrews Failed to Satisfy Its Burden of Proof

Saint Andrews's trial theory, in part, was the August 13, 2020 nonjudicial foreclosure sale was wrongful because "the default was cured." In other words, Saint Andrews was current on its loan payments. However, the jury made factual findings that Saint Andrews had *not* done all it was substantially required to do under the contract, which included curing the default, and the foreclosure sale was therefore not wrongful. Saint Andrews now alternatively contends the jury got it wrong.

7

The burden was on Saint Andrews to show the debt was not in default to preclude a foreclosure sale. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 440 [" 'The trustor-mortgagor or the person who alleges that a debt has been paid has the burden of proving payment.' "].) Once the existence of a debt is established, the burden to prove payment is on the debtor. (*McKay v. McKay* (1921) 184 Cal. 742, 747–748; *Egilbert v. Hall* (1941) 44 Cal.App.2d 305, 307–308.)

Because Saint Andrews had the burden of proof at trial, the question on appeal is whether the evidence compels a finding in favor of Saint Andrews as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570–571; *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 464–466.) Saint Andrews cannot foist its burden of proof on Curry Parkway by claiming it failed to provide an accounting of Saint Andrews's default on the loan.

Saint Andrews faces a daunting standard on review. A defense judgment based on failure of proof will be upheld unless the plaintiff's evidence is "uncontradicted and unimpeached," and "of such a character and weight as to leave no room for a judicial determination that it is insufficient to support a finding." (*Roesch v. De Mota, supra*, 24 Cal.2d at p. 571; *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc., supra*, 196 Cal.App.4th at p. 466.) Saint Andrews failed to meet that standard.

Saint Andrews's evidence at trial consisted of the testimony of Benjamin Ellenberg and related exhibits. Ellenberg testified the $400,000 Gardena property was purchased with a $100,000 down payment and a $300,000 loan from the Trust secured by a

8

deed of trust. Its monthly loan payments were $1,932.90. Saint Andrews made these payments until "early to mid-2020."

Ellenberg testified he received a notice of default in the amount of $3,362.84 to date from the Trust in March 2020. The Trust then exercised its assignment of rents provision and began collecting the $4,000 in monthly rent payments directly from the Gardena property tenant at the time.[5] Ellenberg testified Saint Andrews also sent the Trust a cashier's check for $10,000 to make sure the loan payments were current.[6] Saint Andrews's "initial default" was "a little bit less of [sic] two months."

Two weeks after sending the check, Saint Andrews received notice the loan had been sold to Curry Parkway. Ellenberg testified he told Curry Parkway the loan had been made current. But the foreclosure sale occurred anyway. Ellenberg testified he also asked Curry Parkway several times for an accounting, but he never received one.

Ellenberg further testified that over a six-month period (from March through August 2020), Curry Parkway would have received the $4,000 in monthly rent payments from the tenant plus the $10,000 check to the Trust totaling $34,000 in payments. Ellenberg testified that sum was more than the $27,651.36 in "Unpaid Charges" shown in the August 10, 2020 pay-off demand, suggesting Saint Andrews could not have been in default.

---

[5] The Trust had originally leased the Gardena property to Aerodynamics Plating Co., Inc. The Trust assigned the lease to Saint Andrews as part of the purchase price. Saint Andrews continued the collection of monthly rent payments from Aerodynamics Plating Co., Inc., until defaulting on the loan.

[6] The copy of the check to the Trust, admitted into evidence as exhibit 13, is illegible.

Ellenberg's testimony and related exhibits do not compel a finding that Saint Andrews was not in default as a matter of law on the date of the foreclosure sale. First, while Ellenberg insisted at trial "we were current on the loan"—i.e. the default had been cured—his August 5, 2020 e-mail shows he intended to negotiate a reinstatement of the loan. When that failed, Saint Andrews decided to pay off the loan in full. We agree with Curry Parkway that Saint Andrews "cannot have it both ways."

Second, Ellenberg's attempt to reconstruct the purported payments to Curry Parkway using the tenant's rent payments and the $10,000 check lacked evidentiary support. There was no proof that those monies, if indeed sent and received, were actually applied to the default. Saint Andrews's position the default had been cured, based on Ellenberg's testimony, was entirely speculative. We find no reason to disturb the special verdict and judgment.

Saint Andrews resists this conclusion by producing three charts in its opening brief. Each chart displays a series of dates with either a dollar "Amount Owed" or "Payments Made." These charts were neither introduced as evidence nor supported by any evidence admitted at trial. We decline to consider them.

## DISPOSITION

The judgment is affirmed.  Saint Andrews is to bear costs on appeal.


                                        LUI, P. J.

We concur:



CHAVEZ, J.



GOORVITCH, J.